IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| *In Re Subpoena Issued to Pretrial Services Agency for the District of Columbia in*<br><br>UNITED STATES OF AMERICA<br><br>v.<br><br>KENNETH SANDERS<br><br>*Defendant*. | Misc. No. 24-00142 (TJK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO REMAND OR, IN THE ALTERNATIVE, ENFORCE THE SUBPOENA**

The United States has charged Kenneth Sanders in the Superior Court for the District of Columbia with robbery, Case No. 2021 CF3 003737. As part of his defense to the United States' prosecution, Mr. Sanders served a subpoena duces tecum for certain documents—which Superior Court Judge Errol Arthur signed and specifically authorized—from the Pretrial Services Agency for the District of Columbia ("PSA"), an agency of the United States that operates exclusively in the District of Columbia and supervises criminal defendants in D.C. Superior Court. The subpoena called for the production of medical, mental health, or substance abuse and/or toxicology reports and testing for a specific period of time for the complaining witness in the prosecution. As the only eyewitness to the incident and the person that identified Mr. Sanders in a one-person show-up identification, the complainant's ability to accurately observe, perceive, and recall details of the

incident are of paramount importance. In addition, as the only civilian witness at trial, the complainant's credibility will be critical.

PSA has not argued that the material sought by Mr. Sanders is not in its possession, nor has it asserted a privilege. PSA also has not disputed that the documents are relevant to Mr. Sanders' defense. Nonetheless, rather than disclose this relevant information in its possession as the Court ordered, on October 22, 2024, PSA filed a Notice of Removal that purports to remove the subpoena to this Court. To date, PSA has not moved to quash the subpoena or provided any explanation for its refusal to comply with the judge-signed subpoena.

This Court should reject the government's refusal to comply with a subpoena ordered by a judge in the very proceeding that the United States has itself initiated. The United States is not immune from an order of the D.C. Superior Court. The United States government is involved in all aspects of the District's criminal legal system. The United States prosecutes crimes against the United States in the D.C. Superior Court. PSA is an independent agency within the Court Services and Offender Supervision Agency ("CSOSA") that was specifically created to supervise individuals accused or convicted of D.C. Code Offenses in the District.[1] The District's criminal legal system as a whole is federally created; indeed, the D.C. Superior Court is a creation of and funded by the United States Congress, and the judges of the D.C. Superior Court are appointed by the President and confirmed by the Senate.

The United States cannot opt in and out of such a system on a whim, both employing the D.C. Superior Court for the prosecution of crimes against the United States, but claiming immunity from that court's process in order to deny access to evidence that is relevant to the defense of

---

[1] PSA performs similar tasks in the U.S. District Court for the District of Columbia. *See* 18 U.S.C. 3154.

people whom the United States is prosecuting. The United States itself invoked the jurisdiction of Superior Court and initiated the prosecution of Mr. Sanders there, and thus waived any claim to sovereign immunity. Moreover, Congress has waived sovereign immunity for such subpoenas in the Administrative Procedure Act ("APA") as to courts of the United States—which includes D.C. Superior Court, established by Congress "pursuant to article I of the Constitution," D.C. Code § 11-101(2)(B). Nor do PSA's "housekeeping" regulations, which permit the agency to centralize its decision-making when responding to subpoenas, confer any substantive privilege by which it can evade a judicial subpoena. In short, the United States cannot have it both ways, using the D.C. Superior Court to prosecute cases, but occasionally claiming an exemption from that court's judicial process. The result the government seeks—permission to "undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense"—is "unconscionable." *United States v. Reynolds*, 345 U.S. 1, 12 (1953).

Mr. Sanders therefore respectfully requests that the Court remand this matter to the Superior Court for adjudication. In the alternative, Mr. Sanders requests that the Court enforce the subpoena ordered by that Court pursuant to Sup. Ct. R. D.C. 17. Mr. Sanders further requests an oral hearing on these matters under LCvR 7(f).

**I.      Removal Was Improper; Remand to Superior Court Is Appropriate.**

Under the federal removal statutes, the individual or entity seeking to remove a matter from state to federal court bears burden of showing that removal was justified and the federal court has jurisdiction. *See* 28 U.S.C. § 1446; *Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*, 606 F. Supp. 2d 114, 120 (D.D.C. 2007) (burden is on party seeking removal to establish federal jurisdiction); *See also In re Clark*, 678 F. Supp. 3d 112, 121 (D.D.C. 2023) ("the party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists

3

in federal court") (citation omitted). If the moving party "cannot meet [its] burden then the court must remand the case." *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 180 (D.D.C. 2003).

PSA's asserted basis for federal subject matter jurisdiction is 28 U.S.C. 1442(a), which provides in pertinent part:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer . . . of the United States or of any agency thereof . . . for or relating to any act under color of such office . . .

The same statute makes clear that state court subpoenas fall within the range of "civil action[s]" that are potentially removable. *See* 28 U.S.C. § 1442(d). However, the statute "has long been interpreted to require 'that federal officer removal must be predicated on the allegation of a colorable federal defense.'" *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 413 (D.C. Cir. 1995) (quoting *Mesa v. California*, 489 U.S. 121, 129 (1989)). Federal defenses are not "colorable" when "they are not supported by law." *In re John Doe*, 801 F. Supp. 478, 484 (D.N.M. 1992). For the reasons explained below, *see infra* Section II, this Court lacks subject matter jurisdiction because PSA lacks a federal defense to subpoena compliance supported by law. Sovereign immunity does not shield the United States from disclosing relevant, exculpatory evidence, in an action that the United States itself initiated. This is particularly clear given the context: A proceeding in a court of the United States in which Mr. Sanders' constitutional right to compulsory process is at issue. Further, PSA's Housekeeping Regulations, which govern the agency's internal process for disclosing information, do not provide any independent legal basis to oppose a subpoena, and do not even apply where the federal government is a party to the litigation, as it is here. PSA has thus failed to meet its burden of establishing federal removal

4

jurisdiction, and the case must be remanded to Superior Court. *Johnson-Brown*, 257 F. Supp. 2d at 180.

## II.     In the Alternative, the Court Should Enforce the Subpoena.

If the Court does exercise jurisdiction over this removal action, it should enforce the subpoena. PSA has not indicated the basis for its refusal to comply with the subpoena. The subpoena is, in fact, enforceable: the government does not have immunity from the orders of the court overseeing a criminal prosecution that the federal government, itself, initiated.

### A.  Sovereign Immunity Does Not Shield the United States from Disclosing Exculpatory Material in Its Possession in A Prosecution the United States Initiated.

Mr. Sanders acknowledges that the United States and, derivatively, its agencies and officers, are generally shielded by sovereign immunity from certain court processes. But sovereign immunity may be waived. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In particular, when a sovereign affirmatively invokes the power of a court to resolve a legal claim, it consents to the jurisdiction of that court over that claim and waives any immunity: "By voluntarily appearing in the role of suitor [the sovereign] abandons its immunity from suit and subjects itself to the procedure and rules of decision governing the forum which it has sought." *Guaranty Trust Co. v. United States*, 304 U.S. 126, 134 (1938); *see also El Badrawi v. Dep't of Homeland Sec.*, 579 F. Supp. 2d 249, 280 (D. Conn. 2008) ("In a criminal action, where the United States has already submitted itself to the court's jurisdiction by bringing suit, it is understandable why the court that heard that criminal action might be able to sidestep any immunity concerns.").

This basic principle has been reaffirmed many times over in as many contexts. A state waives sovereign immunity when it "voluntarily invokes [federal court] jurisdiction." *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *see also Lapides v. Bd. Of Regents of the Univ. Sys. Of Ga.*, 535 U.S. 613, 619 (2002) (explaining that

a state's voluntary appearance in federal court will waive its sovereign immunity under the Eleventh Amendment). Foreign governments waive sovereign immunity when they initiate legal proceedings in United States courts. *National City Bank of New York v. Republic of China*, 348 U.S. 356, 361-62 (1955). And the United States waives sovereign immunity when it voluntarily initiates legal proceedings in its own or other courts. *See, e.g.*, *United States v. United States v. Norwegian Barque "Thekla,"* 266 U.S. 328, 339-40 (1924) (Holmes, J.) (United States waived sovereign immunity in Admiralty Court where it became a party to damages suit on its own motion: "When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter."); *United States v. Tsosie*, 92 F.3d 1037, 1043 (10th Cir. 1996) ("When the United States institutes a suit, it thereby consents by implication to the full and complete adjudication of all matters and issues which are reasonably incident thereto.") (internal quotation and citation omitted).[2]

      Here, Mr. Sanders has been charged with a crime by the United States. *See* D.C. Code § 23-101(c) (directing that most criminal prosecutions, including the violation of D.C. Code with which Mr. Sanders is charged, "shall be conducted in the name of the United States by the United States attorney for the District of Columbia"); *see also Goode v. Markley*, 603 F.2d 973, 976 (D.C. Cir. 1979) ("Violations of the District of Columbia Code and violations of the United States Code are all crimes against a single sovereign, namely, the United States."). And it is the United States that opted to invoke the process of the Superior Court in an effort to prove Mr. Sanders' guilt of this crime beyond a reasonable doubt. Thus, the United States has waived sovereign immunity with

---

[2] This waiver of sovereign immunity is not universal; it must relate to the claim(s) brought by the sovereign. *National City Bank*, 348 U.S. at 364 ("It is recognized that a counterclaim based on the subject matter of a sovereign's suit is allowed to cut into the doctrine of immunity."). Here, the evidence sought from PSA relates to the reliability of the complaining witness, and is thus central to the government's case in Superior Court.

respect to any action taken by Mr. Sanders in an effort to mount a defense to the charges the United States has brought against him. In particular, the United States has acceded to the process of the Superior Court to direct it to provide trial evidence (here through Superior Court Criminal Rule 16 and 17) to Mr. Sanders and to resolve any discovery disputes. *See National City Bank*, 348 U.S. at 361-62 (condemning an assertion of sovereign immunity by a foreign government that had invoked federal court jurisdiction: "It wants our law, like any other litigant, but it wants our law free from the claims of justice."). In other words, the United States cannot wield the sword of its power to prosecute and then hide behind the shield of sovereign immunity when it comes to information relevant to the accused's defense. *Cf. Banks v. Dretke,* 540 U.S. 668, 696 (2004) ("A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process.").

PSA is bound by this waiver. PSA, of course, has no independent claim to sovereign immunity. It enjoys this waivable protection only because it is a component of the United States government. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949) (acknowledging that "the sovereign can act only through agents" and that sovereign immunity bars a suit against a federal agency or officer not because of their status as such "but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction"); *Perry v. United States*, 936 F. Supp. 867, 879 (S.D. Ala. 1996) ("Sovereign immunity is not a defense to be invoked or waived by [an individual federal official]; sovereign immunity belongs to the sovereign, the United States of America.").

Sovereign immunity is even more plainly defeated as to PSA itself because it routinely accedes to the jurisdiction of the Superior Court—indeed, it is statutorily obligated to. The agency's name is "Pretrial Services Agency *for the District of Columbia*." Formerly an agency

7

within the Executive Office of the Mayor of D.C., PSA became an independent agency within CSOSA pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997. *Chase v. Pub. Defender Serv.*, 956 A.2d 67, 72-73 (D.C. 2008). It was created to "provide supervision, through qualified supervision officers, for offenders on probation, parole, and supervised release pursuant to the District of Columbia Official Code." D.C. Code § 24-133(c)(1). And in carrying out these duties, PSA is obligated by statute to "secure pertinent data" and "furnish [] report[s]" for the "Superior Court of the District of Columbia." D.C. Code §§ 23-1301, 1302(1), 1303(c). CSOSA, similarly, is obligated by statute to "*carry out the conditions of release imposed by the Superior Court* . . . and shall make such reports to the Superior Court with respect to an individual on probation *as the Superior Court may require*." D.C. Code § 24-133(c)(3) (emphasis added).

Moreover, beyond the waiver of sovereign immunity resulting from the United States' initiation of this prosecution in D.C. Superior Court, another waiver is found in the APA. In the APA, Congress waived the United States' sovereign immunity for any "action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act . . . ." 5 U.S.C. § 702. *See also Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006). This waiver of sovereign immunity, while limited to actions for non-monetary relief, "applies to any suit whether under the APA or not." *Trudeau*, 456 F.3d at 186 (quoting *Chamber of Commerce v. Reich,* 74 F.3d 1322, 1328 (D.C. Cir. 1996)). And courts have made clear that a matter enforcing a subpoena against the federal government falls within § 702's ambit, as such a matter "alleges that an agency or an officer within has failed to act lawfully." *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 n.9 (9th Cir. 1994); *see also Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d

1208, 1212 (D.C. Cir. 1996) (citing 5 U.S.C. § 702 for the proposition that the federal government has waived sovereign immunity in federal court where a litigant seeks the production of document by means of a subpoena).

The District of Columbia Superior Court is a court of the United States—both in reality and under the APA—and so PSA does not enjoy sovereign immunity from Mr. Sanders' efforts to enforce his Superior Court subpoena. When Congress wants to limit the applicability of a law to certain federal courts, or give the term "court of the United States" a meaning other than its plain one, it does so. For example, in setting out guidelines for the Judicial Branch in Title 28 of the U.S. Code, Congress explicitly defined "court of the United States" to mean, "as used in this title" only, "the Supreme Court of the United States, courts of appeals, district courts constituted by chapter 5 of this title, including the Court of International Trade and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451. Similarly, when Congress wants to constrain the meaning of "court of the United States," to a broader subset of federally established courts—beyond those authorized in Article III—it still defines the term within a specific context, such as in the statute covering witness immunity and grand jury appearances in criminal cases. *See* 18 U.S.C. § 6001(4) (including the District of Columbia and other non-Article III courts—but not all federally established courts—as "court[s] of the United States" for purposes of the chapter).

The APA contains no similar textual limitation to the term "court of the United States," either in the sovereign immunity waiver in § 702, or in a parallel usage in § 701. The term thus includes D.C. Superior Court, which was established by Congress "pursuant to article I of the Constitution," D.C. Code § 11-101(2)(B), and as the United States Court of Appeals for the District

9

of Columbia recognized, is "a court of the United States." *United States v. Harris*, 314 F.3d 608, 609 n.1 (D.C. Cir. 2002) (citations omitted).

### B. Mr. Sanders' Right to Compulsory Process and the Federal Government's Role as Sovereign in the District of Columbia Reinforce the Validity of the Subpoena.

The issue at hand, whereby the United States is the prosecuting entity but claims to be immune from a subpoena in the very prosecution it initiated, is unique to the District of Columbia—a city controlled by the United States Congress. The District "is constitutionally distinct from the States," *Palmore v. United States*, 411 U.S. 389, 395 (1973), and the Superior Court is not a state court, but a court of the United States established by Congress "pursuant to article I of the Constitution." D.C. Code § 11-101(2)(B). Violations of the D.C. Code that are prosecuted in Superior Court are considered crimes against the United States, and are prosecuted by the United States Attorneys' Office. *Goode*, 603 F.2d at 976. This unique role of the federal government in the District's governance—including the creation of the Superior Court and the prosecution of criminal cases in the Superior Court—only reinforces the validity of a Superior Court subpoena to an agent of the United States operating within the District.

First, given the entanglement of the federal government with all aspects of the District's criminal proceedings—which are, themselves, prosecutions brought by and on behalf of the United States—a finding that the United States is immune from the court in which it prosecutes would undermine the fundamental rights of those accused of crimes. Here, it is unassailable that Mr. Sanders has a fundamental right to compulsory process and to the due process of law; that is, to "a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (reaffirming that the Constitution guarantees criminal defendants a meaningful opportunity to present a "complete defense") (internal quotation and citation omitted); *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)

10

(Sixth Amendment Compulsory Process Clause gives criminal defendants "the right . . . to put before a jury evidence that might influence the determination of guilt"); U.S. Const. Amend. V & VI. Here, a judge has already determined that these constitutional guarantees entitle Mr. Sanders to subpoena medical, mental health, or substance abuse and/or toxicology reports and testing for the complaining witness during a specific period of time, including the alleged incident, from PSA. These records will enable him to bolster his defense by properly investigating the complainant's credibility and reliability in her observations, statements to police, and purported identification. It will also allow Mr. Sanders to effectively cross examine the complainant regarding important sources of bias.[3] *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (a defendant's right to compulsory process is triggered by a "plausible showing" that the testimony sought would be "material and favorable to his defense"); *United States v. Guild*, 341 Fed. Appx. 879, 886 (4th Cir. 2009) ("[A] failure to disclose information under *Touhy* . . . violates the defendant's Sixth Amendment rights to present a defense where the defendant can show that the excluded testimony 'would have been both material and favorable to his defense.'") (quoting *Valenzuela-Bernal*, 458 U.S. at 867). The United States cannot be permitted to prosecute Mr. Sanders in Superior Court but claim immunity from an order to disclose this evidence. It would be "unconscionable to allow [the government] to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds*, 345 U.S. 1, 12 (1953).

---

[3] Mr. Sanders is additionally prepared to make an *ex parte* proffer to the Court regarding the critical nature of the requested records. As this case is still pre-trial in D.C. Superior Court, Mr. Sanders cannot be forced to disclose the details or facts supporting his defense prior to trial. *See Bowman v. United States*, 412 A.2d 10, 12 (D.C. 1980) ("We conclude that the trial court's action" requiring defense counsel to disclose pretrial even just "the general nature of the defense" "amounted to an usurpation of power and that a writ of mandamus may properly lie against the [Court's] order compelling defense disclosure . . . .").

Second, a claim of immunity that would arise from a state-court subpoena simply does not arise here, where the Superior Court is not a state court, but rather a court of the United States.[4] The District of Columbia is the "seat of the Government of the United States" where Congress has exercised "exclusive Legislation in all Cases," U.S. Const. Art. I, § 8, cl. 17, and where the United States prosecutes both federal and D.C. Code offenses. While Congress has at times expanded local control of aspects of the government,[5] it has also at times expanded the federal presence in local affairs, as it did in 1997, when it established CSOSA as the agency responsible for the supervision of District of Columbia offenders, and thereby "shifted control over several criminal justice functions from the District of Columbia to the federal government." *Chase v. Pub. Defender Serv.*, 956 A.2d 67, 72 (D.C. 2008). But at all times, the United States has remained the sole sovereign in the District. *See, e.g., United States v. Comstock*, 560 U.S. 126, 172 n.10 (2010) (Thomas, J., dissenting) ("The Constitution grants Congress plenary authority over certain jurisdictions where no other sovereign exists, including the District of Columbia, Art. 1, § 8, cl. 17, and federal territories, Art. IV, § 3, cl. 2.").

The D.C. Superior Court was itself created by Congress. Prior to its existence, local prosecutions—just like the one brought against Mr. Sanders—were filed in the United States

---

[4] Congress's broad waiver of sovereign immunity for claims for non-monetary relief in 5 U.S.C. § 702, a provision of the APA, has largely rendered sovereign immunity a non-issue in federal court. This broad waiver, however, has not left federal entities unprotected. Rather than invoking sovereign immunity, "courts have proceeded on the basis that the government has a set of special privileges—*e.g.,* executive privilege, state secrets, deliberative process—which it may invoke to prevent disclosures that would be inimical to national security or its internal deliberations." *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 408 (D.C. Cir. 1984) (internal citations omitted).

[5] The most notable examples are the District of Columbia Court Reform and Criminal Procedure Act ("the Court Reform Act"), Pub. L. No. 91-358, 84 Stat. 473 (1970), and the District of Columbia Self-Government and Governmental Reorganization Act ("the Home Rule Act"), Pub. L. No. 93-198, 87 Stat. 877 (1973).

District Court for the District of Columbia, where issues of immunity did not arise. Then, through the Court Reform Act of 1970, and in the exercise of its Article I powers, Congress established the Superior Court as part of its efforts "to relieve the regular Art. III courts, that is, the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit, from the smothering responsibility for the great mass of litigation, civil and criminal, that inevitably characterizes the court system in a major city." *Palmore v. United States*, 411 U.S. 389, 408-09 (1973) (citations omitted).

In establishing the Superior Court, however, Congress "did not vitiate the essential character of the District of Columbia as an arm of the sovereign United States." *Goode*, 603 F.2d at 976. Indeed, recognizing the unitary sovereignty in the District of Columbia, the D.C. Circuit has held that violations of the District of Columbia Code over which the Superior Court has jurisdiction are crimes against the United States. *Id.* ("Violations of the District of Columbia Code and violations of the United States Code are all crimes against a single sovereign, namely, the United States."); *see also Milhouse v. Levi,* 548 F.2d 357, 360 n.6 (D.C. Cir. 1976) ("Violation of criminal provisions of the District of Columbia Code are considered offenses against the laws of the United States notwithstanding the local nature of the court system."). Even as it was creating the new Superior Court with expanded jurisdiction, Congress expressly provided that prosecutions would continue to be, with long-recognized minor exceptions, "in the name of United States by the United States attorney for the District of Columbia or his assistants." D.C. Code § 23-101(c).

Thus, while a state court subpoena seeking records from a non-party federal agency will give rise to issues of sovereign immunity, a subpoena from Superior Court does not. The Superior Court was created by Congress, is funded by the federal government, and has a judiciary appointed by the President of the United States. The criminal cases it hears were heard in federal district

13

court until 1970, the United States has always been—and continues to be—the prosecuting entity. In any system where the United States wields its sovereignty as a sword to prosecute crimes, it cannot also use that sovereignty to shield its agencies from the exercise of criminal defendants' constitutional rights—especially when a defendant seeks evidence in a prosecution "founded upon those very dealings to which the [evidence] relate[s], and whose criminality they will, or may, tend to exculpate." *United States v. Andolschek*, 142 F.2d 503, 506 (2d Cir. 1944).

### C. PSA's Housekeeping Statute Does Not Confer a Privilege Against Disclosure.

Like many federal agencies, PSA has prescribed regulations that set forth internal procedures for handling requests for agency information. 28 C.F.R. 802.24 *et seq.* These regulations, referred to as *Touhy* regulations, are authorized by the federal "Housekeeping Statute," 5 U.S.C. § 301, which provides that a "head of an Executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers and property." These regulations allow for "centraliz[ed] determinations as to whether subpoenas duces tecum will be willingly obeyed or challenged," *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

While agencies may prescribe regulations that govern the disclosure of information, it is beyond dispute that a government agency may not cite its *Touhy* regulations as "the legal basis for any opposition to [a] subpoena"; rather, any ground for resisting disclosure "must derive from an independent source of law such as governmental privilege or the rules of evidence or procedure." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007) (internal quotation and citation omitted); *see also Houston Business Journal*, 86 F.3d at 1212 ("[N]either the Federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents from a federal court.");

14

*Committee for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971) (finding that a "housekeeping" provision "does permit centralization of a responsibility in a department whether to claim a privilege" but it "does not confer a privilege").

Moreover, an agency's *Touhy* regulations have no application whatsoever to cases in which the United States is a party. In cases involving private parties, a federal agency may refuse to produce documents and the aggrieved party may seek review of the refusal by filing a complaint under the APA in federal court. "The policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989). A court will not enforce a subpoena where a "private litigant[] seek[s] to drag a witness employed by the federal government or one of its agencies into court to offer some testimony on a particular party's behalf." *Alexander v. F.B.I.*, 186 F.R.D. 66, 71 (D.D.C. 1998).

But this rationale is inapplicable where the United States is a party. In *Alexander*, the Court rejected the Department of Defense's effort to limit deposition testimony of one of its inferior officers based on the agency's *Touhy* regulations. *Id.* at 68–69. As Judge Lamberth explained, *Touhy* is applicable "only in cases where the United States is not a party to the original legal proceeding." *Id.* at 70. "When the United States is a party to litigation, judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers. This would create a significant separation of powers problem." *Id.* (quotations and citations omitted). Therefore, the Court found that "it is clear that because the United States is a party to this litigation, plaintiffs are not required to rely on the applicable *Touhy* regulations in their efforts to elicit testimony or other discovery materials from DOD employees." *Id.* at 70 n.2.

Here, the United States is a party to the original legal proceeding—indeed, the United States initiated the original legal proceeding against Mr. Sanders. And it is within this prosecution that the United States was ordered, pursuant to a judge-signed subpoena, to provide Mr. Sanders with documents relevant to his defense. Just as sovereign immunity does not shield the United States from such a judicial order, neither do the agency's housekeeping regulations.

For the foregoing reasons, and any that may appear to this Court at a hearing on this Motion, Mr. Sanders respectfully requests that the Court grant this Motion and remand this matter to D.C. Superior Court or, in the alternative, enforce the subpoena.

Date: December 20, 2024

Respectfully submitted,

/s/ Hanna Perry
Hanna Perry, D.C. Bar No. 90003756
Kavya Naini, D.D.C. No. D00490
Public Defender Service for the
District of Columbia
633 3rd Street N.W.
Washington D.C. 20001

*Counsel for Kenneth Sanders*