**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRETRIAL SERVICES AGENCY FOR THE DISTRICT OF COLUMBIA,<br><br>*Petitioner*,<br><br>v.<br><br>KENNETH SANDERS,<br><br>*Respondent*. | Misc. Action No. 24-142 (TJK) |

**MEMORANDUM OPINION**

The United States is prosecuting Kenneth Sanders for robbery in the Superior Court of the District of Columbia. Last fall, the judge overseeing that case authorized a subpoena directed to the Pretrial Services Agency for the District of Columbia, a federal agency that supervises defendants before their trials. Sanders sought medical and toxicology reports about the alleged victim, who is apparently the only eyewitness of the purported robbery. But the agency did not turn over those records. Instead, it removed the subpoena to federal court and moves to quash on sovereign-immunity grounds. For his part, Sanders moves to remand or, alternatively, to enforce the subpoena.

Because the United States has not consented to the enforcement of a state-court subpoena against it, Sanders cannot obtain the remedy he seeks—at least not in this posture. To be sure, the federal government sometimes provides limited consent to suit when it seeks civil remedies as a plaintiff. But nothing about those cases suggests that this rule extends to criminal prosecutions. And the more traditional way of showing consent—congressional waiver—does not help Sanders either. The Administrative Procedure Act waives sovereign immunity for certain cases in courts of the United States, not in the District of Columbia's local courts. And without a waiver of

sovereign immunity, the Court must quash the subpoena and leave it to the trial court to determine what Pretrial Services' non-disclosure means for the prosecution moving forward. So the Court will grant the agency's motion, deny Sanders's, and quash the subpoena.

I.     **Background**

Almost four years ago, the United States charged Sanders with robbery in D.C. Superior Court. *See United States v. Sanders*, No. 2021 CF3 003737 (D.C. Super. July 5, 2021). The case was delayed partly because of the COVID-19 pandemic. In October 2024, the judge presiding over the case authorized a subpoena against the Pretrial Services Agency. *See* ECF No. 1 at 5. According to that subpoena, the agency must bring to court "[a]ny and all medical, mental health, or substance abuse and/or toxicology reports and testing," *id.*, for the "complaining witness," ECF No. 9 at 3. Pretrial Services removed the subpoena to federal court a few weeks after Sanders served it. *See* ECF No. 1 at 2.

In late 2024, Sanders moved to remand or, alternatively, to enforce the subpoena. *See* ECF No. 7. Removal was improper, Sanders argues, because Pretrial Services lacks a "colorable federal defense." ECF No. 7-1 at 4 (citation omitted). That argument mostly merges with his contention that the Court should enforce the subpoena. *See id.* at 5. In other words, Sanders reasons that the agency's defense against enforcement relies on sovereign immunity barring suit, so it has no colorable federal defense justifying removal if that theory does not pan out. *See id.* at 4.

Pretrial Services opposed Sanders's motion and cross-moved to quash the subpoena. The arguments about removal and enforcement (or non-enforcement) again converge. Federal agencies possess sovereign immunity against state-court subpoenas, Pretrial Services contends, and nothing has waived that immunity here. *See* ECF No. 9 at 4–8. Plus, Sanders disregarded the agency's regulations governing the disclosure of official information, and he should not be able to short-circuit that process by enforcing the subpoena. *See id.* at 8–9. The parties responded to each

other's motions, *see* ECF Nos. 11, 12, and the Court held a hearing on them earlier this month.

## II.     Legal Standards

Federal agencies and officers can sometimes remove to federal court "civil action[s] or criminal prosecution[s] that [are] commenced in a State court." 28 U.S.C. § 1442(a)(1).  The state-court case must target actions taken "under color of such office." *In re Subpoena In Collins*, 524 F.3d 249, 251 (D.C. Cir. 2008) (quoting § 1442(a)(1)).  That requirement, in turn, mandates that removal "be predicated on the allegation of a colorable federal defense." *Id.* (citation omitted). But if the agency has one of those, it may remove "state subpoena proceedings" because they count as a "civil action." *Id.* (citation omitted).  Still, "[t]he party opposing [the] motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005).

If "the state court" that issued the subpoena "lacks the jurisdiction to enforce" it, then the "federal court" does not "acquire[]" jurisdiction to do that upon removal under § 1442. *Edwards v. DOJ*, 43 F.3d 312, 316 (7th Cir. 1994) (citation omitted); *Merkulov v. U.S. Park Police*, 75 F. Supp. 3d 126, 129–30 (D.D.C. 2014).  That is because the "jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Minnesota v. United States*, 305 U.S. 382, 389 (1939).  So when the "sovereign immunity doctrine bars enforcement of the subpoena," "courts have quashed state court subpoenas . . . that were removed on the ground that [the] court . . . lacks jurisdiction to enforce a subpoena against an unwilling sovereign." *Louisiana v. Sparks*, 978 F.2d 226, 235 (5th Cir. 1992).  Put another way, a federal court will quash a state-court subpoena directed to a federal agency if "[s]overeign immunity bars the state court"—and thus the federal court "on removal jurisdiction"—from enforcing the subpoena. *Maryland v. Smith*, No. 24-cv-3699 (BAH), 2025 WL 388645, at *7 (D. Md. Feb. 3, 2025); *see also California v. MacKenzie (In re Subpoena Issued to Merrick Garland)*, No. 24-mc-119 (RC), 2025 WL 1190779,

3

at *3 (D.D.C. Apr. 23, 2025).

**III.   Analysis**

    **A.   Removal Is Proper Under Section 1442(a)(1)**

Sanders challenges removal on only one ground: Pretrial Services lacks a colorable federal defense. *See* ECF No. 7-1 at 4–5. But as explained below, the agency has more than just a *colorable* federal defense; it has a winning one. *See In re Subpoena In Collins*, 524 F.3d at 252 n.2 (removal proper because "the federal defense was indeed colorable" where agency's "design suggest[ed]" that it has "sovereign immunity" (citation omitted)). And the other requirements for removal under § 1442(a)(1), though uncontested, pose no problem. Pretrial Services is part of the Court Services and Offender Supervision Agency for the District of Columbia, which is "a federal government entity." *Way v. Johnson*, 893 F. Supp. 2d 15, 22 (D.D.C. 2012); *see also, e.g.*, *Williams v. Pretrial Servs. Agency for D.C.*, No. 23-cv-1859 (RDM), 2024 WL 4103708, at *1 n.1 (D.D.C. Sept. 6, 2024) ("PSA is a federal agency.") As mentioned, "state subpoena proceedings" fall within the scope of the removal statute. *See In re Subpoena in Collins*, 524 F.3d at 251. And § 1442(d)(6) defines "State court" to "include[] the Superior Court of the District of Columbia." So Pretrial Services properly removed the subpoena at issue to this Court.

    **B.   Sovereign Immunity Requires the Court to Quash the Subpoena**

"The Federal Government cannot be sued without its consent." *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009). That much "has been settled since at least the mid-nineteenth century." Wright & Miller, *Federal Practice & Procedure* § 3654 (Apr. 2025 update). This doctrine of sovereign immunity, moreover, carries jurisdictional importance. The government's "consent" to suit "is a prerequisite for jurisdiction," *United States v. Mitchell*, 463 U.S. 206, 212 (1983), and "the power to consent to such suits is reserved to Congress," *United States v. Dalm*, 494 U.S. 596, 610 (1990). More than that, the consent must be "unequivocally expressed" in the form of "a

4

clear statement . . . waiving sovereign immunity." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citation omitted). That said, some cases recognize limited circumstances in which the United States waives immunity—to some degree—when it "comes into court and institutes a suit for redress . . . and submits a claim wholly in the nature of a private litigant." *United States v. Moscow-Idaho Seed Co.*, 92 F.2d 170, 173 (9th Cir. 1937).

As a federal agency, Pretrial Services "is shielded by sovereign immunity" in "state court," which "prevents the state court from enforcing the subpoena." *Hous. Bus. J., Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1211 (D.C. Cir. 1996). Sanders, arguing that the Superior Court's subpoena is enforceable despite sovereign immunity, pursues both waiver paths described above. He begins with the exception to the rule that Congress must waive sovereign immunity. In Sanders's view, the United States has waived any immunity related to the subpoena because it "affirmatively invoke[d] the power of a court to resolve a legal claim"— here, by bringing a criminal prosecution. ECF No. 7-1 at 5. And even if not, Sanders says that the APA waives sovereign immunity under the more typical method of consenting to suit. *See id.* at 8–10. But neither theory does what Sanders needs it to: show that the federal government consented to a state-court subpoena against one of its agencies.

To begin, the consent-by-lawsuit exception is not nearly as broad as Sanders contends. He "cites no case[]—and this Court knows of none—in which" a court held that "the United States . . . waived its sovereign immunity merely by bringing a criminal prosecution." *United States v. Fears*, 789 F. Supp. 2d 166, 169 (D.D.C. 2011), *vacated*, *United States v. Fears*, No. 11-mc-174 (RLW), 2011 WL 7054090, at *1–2 (D.D.C. Nov. 1, 2011) (vacating opinion after the prosecution produced all requested documents except redactions that the trial court found "need not be produced to [the defendant]"). Instead, the caselaw shows that this limited exception is just that—a

5

narrow carveout from the rule that Congress must waive sovereign immunity. Some of these cases, for example, are "only admiralty cases allowing a limited cross-libel claim against the United States when the United States sues another vessel for collision damages." *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Account Ending in 2653*, 942 F.3d 655, 665 (5th Cir. 2019) (collecting cases and rejecting the argument that "the United States waives sovereign immunity simply by 'initiat[ing] an *in rem* proceeding'"). And further review of the caselaw reveals why this exception, whatever its contours, does not extend to criminal prosecutions.

For the most part, these cases are lawsuits "brought by the United States[] to recover money." *United States v. Ringgold*, 33 U.S. 150, 163 (1834). In that context, the defendant may assert a "counterclaim . . . against [the] sovereign" to "defeat or diminish the sovereign's recovery" of money—that is, "recoupment." *United States v. Intrados/Int'l Mgmt. Grp.*, 277 F. Supp. 2d 55, 62 (D.D.C. 2003) (citation omitted). But "the United States does not," by suing a party, waive "sovereign immunity" beyond that. *Id.* (citation omitted). To the contrary, "courts have firmly rejected" the "theory of a general waiver by implication," so the United States does not "submit[] itself to the court's full jurisdiction as to any counterclaim" just by "commenc[ing] an action." Wright & Miller, *Federal Practice & Procedure* § 1427 (Apr. 2025 update). A "suit in the name of the United States," then, does not "subject[] the United States to an *affirmative* adverse judgment on a counterclaim." *United States v. Forma*, 42 F.3d 759, 764 (2d Cir. 1994) (emphasis added) (citation omitted).

What this means in practice is that when the United States sues a party for money, it opens itself up to claims arising out of the relevant transaction that seek to diminish the government's recovery. Or in slightly different terms: a defendant may "recoup on a counterclaim an amount equal to the principal claim" by the United States. *Forma*, 42 F.3d at 764. For example, a

6

defendant in a False Claims Act lawsuit may dodge the sovereign-immunity bar by asserting "a counterclaim for recoupment[] alleging that" the United States breached the contract. *Intrados/Int'l Mgmt. Grp.*, 277 F. Supp. 2d at 57. But that recoupment counterclaim must be limited; it is just the "right of a defendant to have the plaintiff's *claim* reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction." *Id.* at 57 n.1 (emphasis added) (quoting Black's Law Dictionary (7th ed. 1999)). Recoupment, after all, is "the setting off against asserted liability of a counterclaim arising out of the same transaction." *Reiter v. Cooper*, 507 U.S. 258, 264 (1993). So these claims "must seek relief of the same kind or nature" of "plaintiff's suit," and the relief sought cannot be "an amount . . . in excess of the plaintiff's claim." *FDIC v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994).

The limited consent-by-suit carveout, then, is typically about claims for money damages and ordinarily does not "appl[y] to non-monetary relief." *United States v. Washington*, 853 F.3d 946, 969 (9th Cir. 2017) (request for injunctive relief barred by sovereign immunity). More precisely, it is "purely defensive" and applies "only to the abatement, reduction, or mitigation of the *damages* claimed by plaintiff." *Citizen Band Potawatomi Indian Tribe of Okla. v. Okla. Tax Comm'n*, 888 F.2d 1303, 1305 (10th Cir. 1989) (citation omitted), *aff'd in relevant part and rev'd in part*, 498 U.S. 505 (1991). Perhaps this concept includes some play in the joints; it might, for instance, cover counter-claims for "occupancy rights" when the United States sues for "ejectment and trespass." *United States v. Tsosie*, 92 F.3d 1037, 1043 (10th Cir. 1996). But the bottom line is that sovereign immunity still bars claims against the United States seeking "affirmative relief . . . beyond the demand" made by the government or the "property in controversy." *The Siren*, 74 U.S. 152, 154 (1868).

Against that backdrop, Sanders faces a steep climb to show that the Court should extend to

criminal cases this exception to the usual rule requiring congressional waiver. The United States has not "sue[d]" Sanders for "damages" or about property rights. *United States v. Bankers Ins. Co.*, 245 F.3d 315, 320 (4th Cir. 2001). Nor is this criminal case "a suit for redress" in which the United States has "submit[ted] a claim wholly in the *nature of a private litigant*" rather than for the "infringement of its sovereignty." *Moscow-Idaho Seed Co.*, 92 F.2d at 173 (emphasis added). Rather, the United States brought "a criminal prosecution" against Sanders, so it is acting "in its *sovereign capacity* to punish domestic criminal conduct." *Pasquantino v. United States*, 544 U.S. 349, 362 (2005) (emphasis added). And precisely because "a criminal prosecution" is "not a suit or action for damages," *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 946 (N.D. Cal. 2016), Sanders's efforts to enforce a subpoena against Pretrial Services go far beyond the limited waiver recognized in the caselaw for when the United States brings civil lawsuits.

The cases that Sanders marshals about the waiver of federal sovereign immunity reinforce this conclusion. In *United States v. The Thekla*, the government sought damages in "the position of a private suitor"—specifically, as the owner of a steamship that collided with the defendant's ship. 266 U.S. 328, 338–40 (1924). Because the case "was like a bill for an account," the United States effectively "offer[ed] to pay the balance if it should turn out against the party bringing" the lawsuit. *Id.* at 340. At bottom, though, *The Thekla* is just an "admiralty case[]" that "allow[ed] a limited cross-libel claim against the United States when the United States sue[d] another vessel for collision damages." *Bank of Am. Account Ending in 2653*, 942 F.3d at 665. So it hardly supports a broader waiver for non-monetary relief in a *criminal* prosecution where the United States acts as a sovereign enforcing its laws rather than as a private litigant seeking money.

Nor do Sanders's other cases. One involved whether a foreign sovereign seeking "to recover [a] deposit" was subject to the "limitation statutes of the forum." *Guaranty Tr. Co. of N.Y.*

8

*v. United States*, 304 U.S. 126, 129, 136 (1938). Another addressed a "counterclaim" for a declaratory judgment about "occupancy rights" in a civil "action for ejectment and trespass." *Tsosie*, 92 F.3d at 1039, 1043. A third was yet again a "civil action" seeking "chiefly . . . monetary damages." *El Badrawi v. DHS*, 579 F. Supp. 2d 249, 252 (D. Conn. 2008). True, the *El Badrawi* court observed that in "criminal action[s]," some courts have—"in certain very limited circumstances"—"expunge[d] criminal records in cases that had proceeded before th[ose] court[s]" despite "immunity concerns" that might otherwise arise. *Id.* at 280 (emphasis omitted). But that court held that the government *retained* sovereign immunity, and it found other cases unpersuasive "because they did not fully discuss whether sovereign immunity barred the expungement action." *Id.* Finally, *Exxon Shipping Co. v. United States Department of Interior* stands for the unremarkable proposition that, because the APA waives sovereign immunity in federal court, the "limitations on a state court's subpoena" power "do not apply when a *federal* court exercises its subpoena power." 34 F.3d 774, 778 (9th Cir. 1994). In sum, these cases cannot do the heavy lifting Sanders asks them to.[1]

---

[1] In reply, Sanders cites three cases involving subpoenas "where the APA"—and its waiver of sovereign immunity—"was inapplicable," which he says shows that "the federal government lacks immunity when it initiates criminal proceedings." ECF No. 11 at 9–10. But none of these cases "fully discuss[ed]"—or even discussed *at all*—"whether sovereign immunity barred the" subpoena, so "the [C]ourt does not find them persuasive" on that issue. *El Badrawi*, 579 F. Supp. 2d at 280. Instead, more recent decisions engaging with the sovereign-immunity question are the better guide. *See United States v. Young (In re Subpoena Issued to FBI)*, No. 24-mc-143 (RC), 2025 WL 1111293 (D.D.C. Mar. 13, 2025); *Smith*, 2025 WL 388645. Even on their own terms, moreover, Sanders's cases are far afield from this one. In *United States v. Poindexter*, the government "object[ed] to only a few paragraphs in the proposed subpoenas" directed to several congressional committees and Senators. 732 F. Supp. 173, 174 (D.D.C. 1990). And the *Poindexter* court quashed those objected-to paragraphs while permitting the recipients to raise "any claims of privilege" to the authorized parts. *Id.* The defendant in *United States v. Layton* also moved for a federal-court subpoena for documents from a congressional committee. 90 F.R.D. 514, 516 (N.D. Cal. 1981). Without mentioning sovereign immunity, the Court limited the subpoena—issued under Federal Rule of Criminal Procedure 17—to one section of a staff report. *See id.* at 518.

The conclusion that the United States did not waive sovereign immunity regarding the subpoena at issue by bringing a criminal prosecution against Sanders is not novel, as several courts in this District have already found in similar circumstances. *See Young*, 2025 WL 1111293, at *3; *Fears*, 789 F. Supp. 2d at 169–70. And from that conclusion, it follows that the Court may not permit the subpoena's enforcement.

Sanders's fallback argument relies on the APA but fares no better. That statute "waives the Government's immunity from actions seeking relief other than money damages." *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260–61 (1999)). The waiver is agnostic as to the cause of action; "whether under the APA or not," a claim meeting the APA waiver's requirements can go forward against the United States. *Id.* In this way, it does not matter that Sanders failed to bring an APA claim—at least for immunity purposes. What does matter, though, is that the D.C. Superior Court issued the subpoena. That is because the APA waives sovereign immunity only for "action[s] in a court of the United States," 5 U.S.C. § 702—language that "courts have interpreted" to mean that the United States "retain[s]" its "immunity from suit in *state courts*," Wright & Miller, *Federal Practice & Procedure* § 3659 (Apr. 2025 update) (emphasis added); *see also Fed. Nat'l Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) (Congress "refus[ed] to waive sovereign immunity for APA actions in the state courts"); *Aminoil USA, Inc. v. Cal. State Water Res. Control Bd.*, 674 F.2d 1227, 1233 (9th Cir. 1982) (APA does not waive sovereign immunity for suit against the "United States or its officers in state courts").

---

Finally, in *United States v. Maloney*, the court quashed the requests for documents while permitting the requests for witnesses to "remain in effect." 37 F.R.D. 441, 446 (W.D. Pa. 1965). But the key point is that *Maloney*, like the other cases, never mentioned sovereign immunity. So the Court can infer little meaning from this trio of cases—and nothing outweighing the persuasive authority of the other cases that explained why sovereign immunity is not waived in a situation like this one.

Sanders does not dispute that general rule. Instead, he says that the D.C. Superior Court *is* a court of the United States, so the action for non-monetary relief—*i.e.*, the subpoena—fits within the waiver of sovereign immunity. *See* ECF No. 7-1 at 9–10; ECF No. 11 at 14. Not so. "The D.C. Superior Court is . . . no[t] a United States court." *Berry v. Buttigieg*, No. 23-cv-3587 (TSC), 2025 WL 859086, at *2 (D.D.C. Mar. 19, 2025) (collecting cases). So a subpoena originating in D.C. "Superior Court" is a subpoena "issued by a State court," meaning that it "cannot be enforced" absent a waiver of sovereign immunity. *Stauffer v. Miller*, No. 14-mc-454 (ABJ) (AK), 2014 WL 12539886, at *2–3 (D.D.C. July 16, 2014). And the APA, which does not waive sovereign immunity for state-court actions, does not solve that problem.

Treating D.C. Superior Court as a state court rather than one of the United States makes good sense. Congress, after all, "created a wholly separate court system" in D.C. to "function[] essentially" like "the local courts found in the 50 States." *Palmore v. United States*, 411 U.S. 389, 408–09 (1973). As part of that reform, Congress "intended" "Article I [D.C.] Superior Court judges . . . to be analogous to state court judges." *United States v. Stewart*, 104 F.3d 1377, 1391 (D.C. Cir. 1997). And it "intend[ed]" that "federal courts" should "treat the District of Columbia judicial system as if it were a state system." *JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1125 (D.C. Cir. 2004). This understanding of D.C. Superior Court explains why it is considered a state court in many contexts. For example, "D.C. local courts are treated as 'state' courts for purposes of federal habeas-corpus jurisdiction." *Gorbey v. United States*, 55 F. Supp. 3d 98, 102 (D.D.C. 2014). So too for the *Rooker-Feldman* doctrine, which bars lower federal courts from reviewing state-court judgments. *Holt v. District of Columbia*, No. 16-cv-2300 (TNM), 2018 WL 4680273, at *1 & n.1 (D.D.C. Sept. 28, 2018). Ditto for Title VII; the "United States's waiver of sovereign immunity" under that statute—which covers claims filed in "United States district

court[s] and each United States court"—does "not extend to Title VII claims filed in D.C. Superior Court." *Robinson v. HHS*, No. 21-cv-1644 (CKK), 2021 WL 4798100, at *4 (D.D.C. Oct. 14, 2021). The upshot is that "the D.C. Superior Court" is a "state court" for APA purposes, so it lacks "jurisdiction to enforce the subpoena because" of "sovereign immunity." *Est. of Pal v. Barcode Corp.*, No. 19-cv-109 (CKK), 2019 WL 4709902, at *2 (D.D.C. Sept. 26, 2019).

Angling to overcome all these cases and reasons to treat the D.C. Superior as a state court rather than a court of the United States, Sanders points to two statutory provisions defining "court of the United States." But neither does so for purposes of the APA. Instead, 28 U.S.C. § 451 defines that phrase—"[a]s used in this title"—to cover various federal courts, including "any court created by Act of Congress" whose judges "are entitled to hold office during good behavior." And although 18 U.S.C. § 6001(4) says that the phrase includes D.C. Superior Court, it does so only for "*this* chapter"—not for the chapter including the APA. The APA, of course, cross-references neither § 451 nor § 6001(4). If anything, Congress's decision to specify D.C. Superior Court in § 6001(4) might suggest that the phrase "court of the United States" typically *excludes* D.C. Superior Court. And Congress separated "courts of the United States" from "the government of the District of Columbia" when defining "agency" under the APA, *see* 5 U.S.C. § 701(b)(1)(B), (D), further implying that the APA tracks the many contexts in which D.C. Superior Court is a state court rather than one of the United States. In any event, the non-APA statutes that Sanders cites do not overcome the default rule that the District of Columbia courts are "a trial and appellate court system . . . separate from the United States courts." *Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308 (D.C. Cir. 2002).

In the end, Sanders has not shown that the APA waives sovereign immunity in a way that permits enforcement of the subpoena. Nor does he point to any other possible congressional

12

waiver. And because his consent-by-suit theory falters for the reasons already discussed, sovereign immunity requires the Court to quash the subpoena. That outcome should not be surprising. Other courts "agree that" when "state-court third-party subpoena proceedings are removed to federal court," "federal sovereign immunity both applies to the third-party subpoenas in the first instance and bars them in the second." *Russell v. Jones*, 49 F.4th 507, 516 (5th Cir. 2022). So too here.

Two final points warrant brief discussion. First, although the parties spill significant ink on the relevance of the agency's regulations for disclosing official materials, the Court need not follow suit. In brief, federal law permits Executive Branch departments to "prescribe regulations" governing the "custody" and "use" of their "records." 5 U.S.C. § 301; *see also United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Agencies may direct individuals seeking records to "adhere to" these "*Touhy* regulations." *Young*, 2025 WL 1111293, at *4. Given the APA's waiver of sovereign immunity, these regulations may have less force in federal cases because § 301 does not itself "authorize[] a federal agency to withhold documents from a federal court." *Alexander v. FBI*, 186 F.R.D. 66, 70 (D.D.C. 1998) (citation omitted). "[I]t is sovereign immunity," in other words, that "gives rises to the Government's power to refuse compliance with a subpoena"—not "housekeeping regulations" promulgated under § 301. *Smith*, 2025 WL 388645, at *8 (citation omitted). But because the Court "quashes the subpoena based on sovereign immunity," it need not untangle how *Touhy* regulations factor in here. *Young*, 2025 WL 1111293, at *4.

Second, the Court's holding here is not necessarily the end of the matter. Sanders could request the records he wants from Pretrial Services under its *Touhy* regulations and then, if the agency denies his request, challenge that decision under the APA's "familiar 'arbitrary and capricious' standard of review." *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 41 (D.D.C. 2017); *see also, e.g.*, *Smith*, 2025 WL 388645, at *8. Or he could argue

13

to the judge overseeing the prosecution that the criminal "case" should be "dismiss[ed]" because this "non-disclosure denies [Sanders] due process of the law." *Young*, 2025 WL 1111293, at *4 (citing *Jencks v. United States*, 353 U.S. 657, 672 (1957)). That argument, though—or one for any other ameliorative measure—is not "a matter for this court"; it is for "the Superior Court judge overseeing the criminal matter." *Id.*; *see also Fears*, 789 F. Supp. 2d at 171 ("[I]t is for the Superior Court, rather than this Court, to decide whether the refusal . . . to produce the subpoenaed records justifies dismissal . . . .").

When the United States "prosecutes an accused," it "has the duty to see that justice is done." *United States v. Reynolds*, 345 U.S. 1, 12 (1953). The Court's decision today says nothing about how the Superior Court judge might answer whether the United States is meeting that obligation in its prosecution of Sanders. But because neither statute nor the initiation of that prosecution waived sovereign immunity, the Court must quash the Superior Court subpoena.

## IV. Conclusion

For all the above reasons, the Court will grant Petitioner's Cross-Motion to Quash, ECF No. 8, and will deny Respondent's Motion to Remand or, in the Alternative, Enforce the Subpoena, ECF No. 7. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: April 30, 2025